## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

**THORIA MASHALY and MOHAMED ABDEL HAMID,**

   **Plaintiffs,**

   **v.**

**LOLITA REALTY, ROBERT PAYNE, ANITA PAYNE, HARRY AVIGA, and JOHN DOE 1–5,**

   **Defendants.**

Civ. No. 15-7168 (KM) (MAH)

**OPINION**

---

**KEVIN MCNULTY, U.S.D.J.:**

*Pro se* plaintiffs Thoria Mashaly and Mohamed Abdelhamed[1] bring this action against their landlords, defendants Lolita Realty, Robert Payne, Anita Payne, and Harry Uvegi.[2] Plaintiffs allege that Defendants violated Title VIII of the Civil Rights Act of 1968 (the Fair Housing Act), engaged in acts of malicious prosecution, violated their right to freedom of speech under the First Amendment, and intentionally inflicted emotional distress upon them. The plaintiffs clearly feel their grievances deeply, but they have failed to produce evidence that they possess a triable claim under federal law.

Now before the Court is Defendants' motion for summary judgment. (DE 87). Plaintiffs have responded to some degree, but they have not produced any physical evidence or witnesses to substantiate their claims. The Court has independently reviewed their depositions and affidavits and given them a

---

[1]   Mohamed's surname(s) is spelled several different ways throughout the parties' filings. Even Plaintiffs have not adopted a uniform spelling, so for the sake of consistency, I will use the spelling employed by Plaintiffs in their most recent filing, "Abdelhamed."

[2]   The defendant's name is Harry Uvegi; the complaint incorrectly spells his surname "Aviga."

liberal reading, but cannot find that there is evidence, or a likelihood of evidence, to support the essential elements of their claims. Accordingly, Defendants' motion for summary judgement is **GRANTED**.

## I.    BACKGROUND[3]

### A.    Facts[4]

Plaintiffs Thoria Mashaly and Mohamed Abdelhamed have rented their home in Jersey City since approximately 2003. Of Arabic descent, they immigrated to the United States from Egypt. Defendants collectively are their landlords: Defendant Lolita Realty is a corporation that owns, manages, and operates the apartment building in which Plaintiffs live; defendants Anita and Robert Payne are the principal owners and officers of Lolita Realty; and defendant Harry Uvegi, their son-in-law, "represents" Lolita Realty in the sense of speaking for it.

Plaintiffs generally allege that Defendants violated Title VIII of the Civil Rights Act of 1968, also known as the Fair Housing Act ("FHA"), and they seek damages for malicious prosecution. Plaintiffs further allege that Defendants used the court system to intimidate them into silence, thereby infringing upon their free-speech rights. Finally, they allege a conspiracy of intentional infliction of emotional distress. Specifically, Plaintiffs allege the following:

1. Defendants violated State rent control laws, did not make necessary repairs to the apartment, failed to maintain a habitable living area, subjected them to false and frivolous court actions, and made threats and conducted criminal mischief to silence them;

2. Lolita Realty was ordered to pay back $8,000 and reduce Plaintiffs' rent and Defendants refused to reimburse them and began to

---

[3]    "DE __" refers to the docket entry number in this case.

[4]    The facts in this opinion are drawn from Defendants' statement of material facts found in their summary judgment brief. (DE 87-1). Plaintiffs' opposition brief neither disputes nor recharacterizes Defendants' account. However, Defendants' statement of material facts accurately characterizes Plaintiffs' deposition testimony (DE 87-9 to -17 & 87-19 to -22) and Hoda's affidavit in support of Plaintiffs' motion to oppose (DE 88).

retaliate and discriminate against them by ceasing necessary repairs, filling malicious charges, blackmailing them, verbally threatening them;

3. Plaintiffs reported these violations to the Mayor of Jersey City, to no response, and Lolita Realty discriminated against other tenants in the building because of their race, color, ethnicity, and religion;

4. Defendants have received over two-hundred violation notices but failed to repair the damage, and the City of Jersey City covered up or failed to alleviate this situation;

5. Defendants increased Plaintiffs' rent in May 2014 and sued to enforce the rent increase; this action was discriminatory and violated Plaintiffs' civil rights;

6. Defendants ordered their superintendent to direct two criminal "acquisitions" against Plaintiffs, alleging that they gave drugs to the superintendent and Defendants asked the superintendent to make a fraudulent insurance claim on their behalf; and

7. Defendants Anita Payne and Harry Uvegi used racial slurs against Plaintiffs.

Abdelhamed was born in Cairo, Egypt and emigrated to the United States in 1999. He has lived here since then. In 2000 or 2003, he moved into the apartment his family currently occupies. Then, as now, it was owned by Defendants.[5] The apartment has forty units, at least four of which are currently occupied by tenants of Arab descent. At the time Plaintiff moved in, the superintendent was a woman named Sharon, who remained in that position until 2006 or 2007. Sharon showed and rented them the apartment and acted as the intermediary between Plaintiffs and Defendants. In fact, Abdelhamed has never spoken with Robert Payne, and he has only once spoken with Anita Payne in person—more than ten years ago. Ten or twelve years ago they also spoke twice on the phone.

---

[5]    It is not clear whether his wife and daughter were then living with him.

Sharon was succeeded by Mario, who worked in the building at some point between 2007 and 2009. Abdelhamed alleges that on two occasions Mario intentionally shut off the elevator, trapping him for eight to ten minutes. Abdelhamed also alleges that Mario intentionally shut off the electricity to Plaintiffs' apartment. Abdelhamed has no evidence that the person responsible was Mario, but he assumes this is so. Plaintiffs filed police reports after each incident.

After Mario left the position, the next superintendent was Peter Romano. Apparently, at one point, Romano tripped and fell in the basement while on the job. The plaintiffs allege that Uvegi told Romano to tell "others" that he had fallen, not in the basement, but in front of Plaintiffs' apartment. Uvegi allegedly also told Romano to tell police that Abdelhamed had given drugs to Romano. Abdelhamed acknowledges, however, that, Romano did not tell anyone that he fell in front of Plaintiffs' apartment or that Abdelhamed gave him drugs.

At some point during the tenancy, Defendants sued Plaintiffs in Jersey City Municipal Court after Plaintiffs refused to allow Defendants to access their apartment to make repairs.[6] Later, in April 2012, Plaintiffs sued Defendants, also in Jersey City Municipal Court, for failure to make repairs; the roof leaked, they said, and water continuously entered the apartment. (DE 87-18 Ex. M). The two sides reached a mediation agreement, which compelled Defendants to complete the repairs with authorized licensed contractors and compelled Plaintiffs to clean the apartment to provide the workers access. The repairs were completed.

In 2005, the Jersey City Rent Leveling Board issued an order denying Defendants' request to increase the rent from $416.10 to $706.00 monthly. (DE 87-18 Ex. N). Instead, the rent was increased only to $432.74. In 2012, Plaintiffs filed a second complaint with the Jersey City Rent Leveling Board. The board determined that no rent was to be paid until certain repairs were made. Plaintiffs paid rent into an escrow account until the repairs were made.

---

[6]    This lawsuit appears to form the basis of Plaintiff's First Amendment claim.

(DE 87-18 Ex. P). The funds were eventually released. At some point, Defendants sought to evict Plaintiffs for failure to pay rent. It is not clear how far this proceeding progressed.

Plaintiffs repeatedly allege that Anita Payne used racial slurs against them, but Abdelhamed has not spoken to her in over ten years. He alleges that on an unknown date he heard from a former superintendent that on an unknown date Payne told the superintendent that she did not want Arabs in the building. Plaintiffs also allege that Uvegi used racial slurs against their them, but Abdelhamed testified that he never heard Uvegi use a racial slur. Instead, he insists that Uvegi, motivated by racial animus, orchestrated the keying (*i.e.,* scratching) of his car, a fight in which Hoda found herself at school, and threats made on the street to Mashaly by an unknown person.

Mashaly confirmed that during their tenancy their neighbors in the building were Egyptian, Israeli, Filipino, Polish, Spanish, American, Indian, and Chinese, and that these included several Muslims. Mashaly most recently spoke to Robert and Anita Payne in 2006 and 2012. She testified that in 2012, Robert Payne told her that he was not feeling well and that they would not be seeing him anymore. She has not spoken to Anita Payne in person since 2012; all conversations since then have been over phone or through the Jersey City Rent Leveling Board. Mashaly does not recall Uvegi using any racial slurs. In 2014, Defendants asked Plaintiffs and at least four other tenants to sign new leases that apparently contained unacceptable terms. Plaintiffs, represented by counsel, sued Defendants and eventually agreed to sign a new lease that provided for a monthly rent of $506.00. Counsel for both sides appear to have reported to the court that the matter was resolved.

### B. Procedural History

Plaintiffs filed this lawsuit on September 29, 2015. (DE 1). On January 15, 2016, Plaintiffs sought leave to amend their complaint to add their daughter Hoda Abdelhamed and neighbor Mamdouh Hussein as plaintiffs. (DE 4). This request was denied on January 27. (DE 5). Plaintiffs' second motion to amend the complaint to add Hoda and Hussein as additional plaintiffs was

denied on January 18, 2017. (DE 31). Plaintiffs' third motion for leave to file an amended complaint adding Hoda Abdelhamed and Mamdouh Hussein as additional plaintiffs was denied on May 8. (DE 41). Plaintiffs' fourth motion to amend the complaint to include Hoda Abdelhamed and Mamdouh Hussein as additional plaintiffs was denied with prejudice on February 22, 2018. (DE 54).

Plaintiffs' response to Defendants' motion for summary judgment (DE 88) appears to be little more than yet another motion to amend the complaint to add Hoda as a plaintiff. These papers do not address Defendants' legal arguments, and do not present evidence of a countervailing factual narrative.

## II.    DISCUSSION

### A. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in light most favorable to the nonmoving party. *See Boyle v. Cty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at

248; *see also* Fed. R. Civ. P. 56(c) (setting forth the types of evidence on which a nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Nw. Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

Here, Mashaly and Hamed, the nonmoving parties, are appearing *pro se*, and have failed to submit any evidence. A *pro se* litigant is ordinarily entitled to considerable leeway. *See Niblack v. Murray*, No. 12-6910, 2016 WL 4086775 at *1 n.1 (D.N.J. July 29, 2016) (citing *Pratt v. Port Auth. of N. Y. & N.J.*, 563 F. App'x 132, 134 (3d Cir. 2014) ("[B]ecause [the plaintiff] is proceeding *pro se*, we will construe his brief liberally."); *Marcinek v. Comm'r*, 467 F. App'x 153, 154 (3d Cir. 2012) (holding that courts are "under an obligation to liberally construe the submissions of a pro se litigant")). Thus, for example, "[w]here the plaintiff is a *pro se* litigant, the court has an obligation to construe the complaint liberally." *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Gibbs v. Roman*, 116 F.3d 83, 86 n.6 (3d Cir. 1997)). I have construed Plaintiffs' pleadings and filings in that liberal spirit, but pleadings alone are ordinarily insufficient to create an issue of fact.

Where, as here, a party fails to address the other party's properly supported motion for summary judgment, the court may consider "grant[ing]

summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e). A failure to dispute a party's statement of material facts, however, "is not alone a sufficient basis for the entry of a summary judgment." *See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168 , 175 (3d Cir. 1990) (holding that even where a local rule deeming unopposed motions to be conceded, the court was still required to analyze the movant's summary judgment motion under the standard prescribed by Fed. R. Civ. P. 56(e) ); *see also Muskett v. Certegy Check Servs., Inc.*, No. 08-3975, 2010 WL 2710555 (D.N.J. July 6, 2010) ("In order to grant Defendant's unopposed motion for summary judgment, where, as here, 'the moving party does not have the burden of proof on the relevant issues, . . . the [Court] must determine that the deficiencies in [Plaintiff's] evidence designated in or in connection with the motion entitle the [Defendants] to judgment as a matter of law.'" (quoting *Anchorage Assocs.*, 922 F.2d at 175)).

### B. Substantive Law

#### 1. The Fair Housing Act

The Fair Housing Act ("FHA") prohibits housing discrimination against any person based upon a protected status such as race, gender or disability. *See* 42 U.S.C. § 3601 *et. seq.* "A plaintiff states a prima facie case under Title VIII, as amended by the FHA, by showing either (1) intentional disparate treatment with regard to housing, or (2) disparate impact alone, without proof of discriminatory intent." *United States v. Branella*, 972 F. Supp. 294, 298 (D.N.J. 1997) (citing *Arc of N.J., Inc. v. New Jersey*, 950 F. Supp. 637, 643 (D.N.J. 1996)).

Plaintiffs have failed to produce any evidence to substantiate their claims under the FHA. There is no evidence that they have been discriminated against in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities because of race, color, religion, sex, familial status or national origin. The evidence in opposition to Defendants' motion for

summary judgment consists of two affidavits (Abdelhamed's and Hoda's) and the transcripts of two depositions (Abdelhamed's and Mashaly's). These contain conclusory statements which do not suffice to raise a material question of fact on the issues as to which Plaintiffs bear the burden of proof.

For instance, in her deposition, Mashaly insisted there were witnesses to Defendants' wrongdoing, but Plaintiffs have not attempted to procure their testimony:

Q. [W]ho . . . are your witnesses?

A. I've got a lot of people who like to come, but I don't have their names.

Q. How do you know they would like to come?

A. They see what is happening to me.

Q. How do you know they want to come?

A. They told me.

Q. And you don't know their names?

A. Well, I don't know the names, but the people showed interest in that.

(DE 87-19 at 10). Moreover, Plaintiffs have not disputed Defendants' statement of material facts and have not attempted to establish any contrary narrative. Supposed use of discriminatory language in each case is said to have occurred outside the plaintiffs' presence. Plaintiffs' depositions and affidavits make repeated reference to medical records and police reports (the implication being that these would support their discrimination lawsuit), but they have not produced any such documents. Because there is no evidence in the record that Defendants violated the FHA with respect to Plaintiffs, this claim must be dismissed.[7]

---

[7]    A claim under the FHA must be commenced "not later than two years after the occurrence with a termination of an alleged discriminatory housing practice." 42 U.S.C. § 613(a)(1)(A). Throughout their filings, Plaintiffs provide vague date ranges, but by their own admission their last in-person interactions with the individual

### 2. First Amendment

The First Amendment provides in part that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. The First Amendment has been incorporated as against state actors, but it does not regulate private conduct. Whether an activity is protected by the First Amendment is a question of law. *See Watters v. City of Philadelphia*, 55 F.3d 886, 892 (3d Cir. 1995).

Here, Defendants misunderstand the protections afforded by the First Amendment:

> Q. How has Lolita Realty used the Jersey City Municipal Court to infringe upon your freedom of speech?
>
> A. Because she says they didn't pay the rent and the rent was paid.
>
> . . .
>
> Q. How [have] the defendants used [the] Jersey City Municipal Court to infringe upon your freedom of speech?
>
> A. When she goes to the court, when she says I refuse to open the house and I open the house for her. When she says that I didn't pay the rent though I have already paid it. When she says, when she claims that I refuse to open the apartment for her though she didn't inform me that she is coming or somebody from her side is coming or that she has to come to inspect.
>
> Q. How does that infringe on your freedom of speech?
>
> A. Of course. When you take me to court and judge me as obscenity it means you have stepped on my right of freedom. First amendment as [a] human being.
>
> Q. How has that ever stopped you from saying what you want to say?
>
> A. I don't know how to explain it. I don't know how to explain this to you. We are going out of our way right now for different story

---

Defendants was over ten years ago. Thus, the FHA's statute of limitations would likely provide independent grounds for dismissal of this count.

than the way we have to come for or the purpose in which we came here for.

Q. You said in your complaint—

A. I know.

Q. — that they took you to courts to infringe upon your freedom of speech. I'm trying to find out what you mean by that?

A. Where is my freedom? Freedom if I'm in a house where I cannot feel my freedom even from inside the house. When I'm feeling that I am not free. When I feel that everyone monitoring my actions, my wife's actions, or my daughter's actions, everything in the house. This was the beginning when they took Peter Romano and they told him when they assigned him for the job and they told him to go and say that my wife harassed his wife and that he can make a complaint against me for that.

(DE 87-12 at 86–88).

Plaintiffs state that they do not feel free, and clearly do not agree with the positions that the Defendants have taken in Jersey City Municipal Court. They offer no evidence, and this Court's review of the record reveals none, that the Defendants have used the resources of the State to infringe upon Plaintiffs' First Amendment rights of self-expression. Plaintiffs have seemingly remained free at all times to speak as they wish. This count must therefore be dismissed.

### 3. Malicious Prosecution

The elements of the state-law tort of malicious prosecution are incorporated into the federal Section 1983 claim. *See Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (*en banc*) (applying the Restatement (Second) of Torts §§ 659, 660 to determine whether a Section 1983 malicious prosecution claim was deemed to have terminated in favor of the accused); *see also Donahue v. Gavin*, 280 F.3d 371, 383 (3d Cir. 2002) (same); *Hilfirty v. Shipman*, 91 F.3d 573 (3d Cir. 1996) (same). Malicious prosecution under 42 U.S.C. § 1983 requires that "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in [the plaintiffs] favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or

for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Halsey v. Pfeiffer*, 750 F.3d 273, 296–97 (3d Cir. 2014) (citing *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007)).

Here, no criminal proceeding was ever initiated. Thus, Plaintiffs are unable to establish the basis of a malicious prosecution case. Accordingly, the claim must be dismissed.

### 4. Intentional Infliction of Emotional Distress

A claim of intentional infliction of emotional distress requires the plaintiff to allege four factors:

1. that defendant acted intentionally or recklessly, both in committing the alleged tortious acts and in producing emotional distress;

2. that defendant's conduct was so outrageous in character and extreme in degree as to go beyond all bounds of decency;

3. that defendant's actions were the proximate cause of the emotional distress; and

4. that the emotional distress suffered was so severe that no reasonable person could be expected to endure it.

*Mardini v. Viking Freight, Inc.*, 92 F. Supp. 2d 378,384 (D.N.J. 1999) (citing *Buckley v. Trenton Sav. Fund Soc'y,* 111 N.J. 355, 366 (1988)); *see also Horvath v. Rimtec Corp.,*102 F. Supp. 2d 219, 235 (D.N.J. 2000).

Plaintiffs have not produced any evidence to demonstrate Defendants' intentional infliction of emotional distress. Indeed, there is neither evidence of Defendants' tortious conduct nor of Plaintiffs' emotional distress. Plaintiffs insist that Defendants used racial slurs against them in the presence of others, but they do not themselves recall ever having heard the use of those slurs. Further, they have not produced any witnesses to corroborate these assertions. Moreover, despite repeated citations to the existence of corroborating medical records, Plaintiffs have made no effort to produce them during discovery. Most of what they allege involves landlord-tenant matters familiar to the municipal

courts, not outrageous or unbearable behavior. Accordingly, Plaintiffs' claim for intentional infliction of emotional distress must also be dismissed.

### III.    CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment is **GRANTED**.

A separate order will issue.

Dated: November 4, 2019

Hon. Kevin McNulty
United States District Judge